UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DERRICK CHARLES CHAPMAN,

                        Plaintiff,

  – against –

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-1873 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Derrick Charles Chapman brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for Supplemental Security Income ("SSI"). The parties have cross-moved for judgment on the pleadings. (Dkts. 18, 21.) Plaintiff seeks reversal of the Commissioner's decision, or alternatively, remand for further administrative proceedings. (Plaintiff's Brief ("Pl.'s Br."), Dkt. 19, at 25.) The Commissioner seeks affirmation of the denial of Plaintiff's claims. (Defendant's Brief ("Def.'s Br."), Dkt. 21-1, at 24.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The case is remanded for further proceedings consistent with this Memorandum and Order.

**BACKGROUND**

**I.    Procedural History**

On January 9, 2015, Plaintiff filed an application for SSI alleging his eligibility for disability benefits beginning on that date. (Administrative Transcript ("Tr."[1]), Dkts. 10, 12,[2] at 17.) On August 17, 2015, Plaintiff's claim was initially denied. (*Id.* at 88.)[3] On September 9, 2015, Plaintiff filed a request for a hearing before an administrative law judge ("ALJ") (*id.* at 101), and appeared with counsel before ALJ Seth I. Grossman on September 18, 2017 and February 20, 2018 (*id.* at 16, 26, 698–763). In a decision dated March 23, 2018, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"). (*Id.* at 26.) On December 18, 2018, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the decision. (*Id.* at 1.) This appeal followed.[4]

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[2] The Commissioner filed a supplemental transcript on November 21, 2019. (Dkt. 12.)

[3] Plaintiff was previously denied Disability Insurance Benefits by the SSA on November 18, 2014 (*see* Tr. at 79); however, those proceedings are not the subject of the current appeal (*id.* at 16).

[4] The statute of limitations for an appeal of a denial of Social Security benefits is sixty days. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c). On August 20, 2019, Defendant wrote to the Court indicating its intention to move to dismiss this case as untimely. (Dkt. 7.) On August 21, 2019, the Court ordered Plaintiff to submit a letter explaining why his filing was delinquent, which he submitted on September 10, 2019. (Dkt. 9.) On September 26, 2019, the Court held a pre-motion conference at which Plaintiff described his efforts to secure a lawyer and to pursue the instant appeal. (*See* Sept. 26, 2019 Minute Entry.) The Court found Plaintiff's statements at the conference credible, and based on the Court's observations of Plaintiff's apparent cognitive difficulties, in combination with his confusion as to his legal representation, determined that Plaintiff faced "extraordinary circumstances," and tolled the sixty-day statute of limitations. (Sept.

**II.     The ALJ Decision**

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps in the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe" impairment. *Id.* § 416.920(a)(4)(ii). An impairment is determined to be severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 416.920(c). If the impairment is not severe, then the claimant is not disabled within the meaning of the Act.

In this case, the ALJ found that Plaintiff "ha[d] not engaged in substantial gainful activity since January 9, 2015, the application date[.]" (Tr. at 18.) The ALJ also found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbosacral spine and a seizure disorder. (*Id.* at 18–19.) The ALJ noted that Plaintiff "told a physician . . . that he had a learning disability," but concluded that "[t]here is no evidence in the record documenting that the [Plaintiff] has a learning disability or any other mental impairment." (*Id.* at 19.)

Having determined that Plaintiff had satisfied his burden at the first two steps, the ALJ proceeded to the third step and determined that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), including 416.920(d), 416.925, and 416.926. (*Id.*) The ALJ specifically considered and rejected the application of Listings 1.04 (spinal disorders) and 11.02 (epilepsy) to Plaintiff's

---

26, 2019 Minute Entry (citing, *inter alia*, *Torres v. Barnart*, 417 F.3d 276, 279 (2d Cir. 2005); *Canales v. Sullivan*, 936 F.2d 755, 759 (2d Cir. 1991)).)

3

impairments. (*Id.* at 19–20.) Moving to the fourth step, the ALJ found that Plaintiff maintained residual functional capacity ("RFC"[5]) to perform "light work,"[6] as defined in 20 C.F.R. § 416.967(b), with the following limitations:

> [H]e can occasionally lift/carry objects weighing up to 15 pounds, and frequently lift/carry objects weighing up to 8 pounds; he can sit for six hours in an 8-hour workday, and for no longer than 45 minutes at one time without the ability to stand for 1 to 2 minutes; he can stand for 3 hours in an 8-hour workday and for no longer than 30 minutes at one time without the ability to sit for 2 to 3 minutes; he can walk for 3 hours in an 8-hour workday and for no longer than 20 minutes without the ability to sit for 2 to 3 minutes; he can perform occasional stair-climbing, stooping, kneeling and crouching; he cannot perform crawling, climbing ladders or scaffolds, or perform work that involves working with heavy machinery or equipment, or working at heights or in cold environments.

(*Id.* at 20.) The ALJ then proceeded to step five to determine whether Plaintiff—given his RFC, age, education, and work experience—had the capacity to perform other substantial gainful work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(v). The ALJ first determined that Plaintiff was unable to perform his past relevant work as a maintenance park worker. (Tr. at 24.) However, the ALJ found that, given Plaintiff's RFC, age, education, and work experience, he could make

---

[5] To determine a plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." 20 C.F.R. § 416.945(a)(1).

[6] According to the applicable regulations:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

the adjustment to and perform work as a marker, checker, and/or garment sorter.  (*Id.* at 25.)  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act since the application date of January 9, 2015.  (*Id.* at 26.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits.  42 U.S.C. § 405(g).  In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera*, 697 F.3d at 151 (internal quotation marks omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and alterations omitted).  In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.* (internal quotation marks omitted).  However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

## DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record, and that the ALJ erred in denying his application for SSI because he failed to adequately develop the record relating to Plaintiff's back injury, seizure disorder, and learning disability.  (*See*

5

Pl.'s Br., Dkt. 19, at 13–19.) Plaintiff also argues that the ALJ failed to give proper weight to the opinions of Plaintiff's treating physicians. (*See id.* at 19–21.) For the reasons set forth herein, the Court agrees in part, and finds that the ALJ committed legal error by failing to properly develop the record concerning Plaintiff's seizure disorder and learning disability, and by failing to properly weigh the medical opinions of Plaintiff's treating physicians. Thus, remand is warranted.[7]

## I. Failure to Develop the Record

"Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), 'the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record.'" *Ajibose v. Colvin*, No. 15-CV-03346 (PKC), 2016 WL 8711342, at *7 (E.D.N.Y. Sept. 30, 2016) (internal quotation marks omitted) (quoting *Scott v. Astrue*, No. 09-CV-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010)). Even if plaintiffs are represented by counsel, "it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Before determining that a plaintiff is not disabled, ALJs are required to "develop [the plaintiff's] complete medical history for at least the 12 months preceding the month in which [he] file[d] [his] application," and to "make every reasonable effort" in assisting plaintiff in getting medical evidence. 20 C.F.R.

---

[7] Because remand is warranted on the grounds discussed herein, the Court does not reach Plaintiff's other argument that the ALJ failed to consider Plaintiff's ability to retain future employment. (*See* Pl.'s Br., Dkt. 19, at 24–25.)

§ 416.912(b)(1).  "An ALJ's failure to adequately develop the record is grounds for remand." *Gillespie v. Comm'r of Soc. Sec.*, No. 19-CV-2907 (AMD), 2020 WL 4451925, at *4 (E.D.N.Y. Aug. 3, 2020) (citing *Rosa v. Callahan*, 168 F.3d 72, 79–80 (2d Cir. 1999)).

While the ALJ's opinion acknowledges the apparent deficiencies in the record before him, it does not indicate that the ALJ fulfilled his affirmative duty to resolve the gaps in the record.[8] (*See, e.g.*, Tr. at 21, 22 (noting that although Plaintiff "has told doctors that he has seizures several times a year, [] there are no medical records confirming any other seizures in the record," and "[t]here are no treatment notes from June 2012 until September 2014")); *see also Moran*, 569 F.3d at 112–13 ("It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." (internal quotation marks, alteration, and citation omitted)).

### A.     Plaintiff's Seizure Disorder

The ALJ found that Plaintiff's "severe" seizure disorder was "controlled with medication" and did "not occur with the frequency required to meet the requirements of Listing 11.02."  (Tr. at 18, 20.)  The ALJ explained that "[Plaintiff] has told doctors that he has seizures several times a year, but there are no medical records confirming any other seizures" aside from two in 2013 and

---

[8] Defendant argues that the ALJ's postponement of the September 18, 2017 hearing to "allow [Plaintiff] additional time to obtain" medical evidence "clearly establishes that the ALJ worked quite diligently in cooperation with [P]laintiff's counsel to obtain relevant documentary evidence." (Def.'s Br., Dkt. 21-1, at 22.)  However, as Defendant notes, Plaintiff's prior counsel notified the ALJ in a February 6, 2018 letter (*see* Tr. at 269) that the record was incomplete—only two weeks before the ALJ resumed Plaintiff's hearing, which was on February 20, 2018.  (Def.'s Br., Dkt. 21-1, at 22 n.6.)  Moreover, contrary to Defendant's suggestion that Plaintiff's counsel needed to "request [] the ALJ's assistance" (*id.*), the ALJ has an independent duty to affirmatively develop the record.  *See Moran*, 569 F.3d at 112–13; *Pratts*, 94 F.3d at 37.

one in 2014.[9]  (*Id.* at 21.)  In addition, the ALJ noted that in July 2017, Plaintiff "told a doctor performing a consultative physical examination that he last had a seizure [in October 2016]."  (*Id.*)  Yet, the ALJ refrained from asking Plaintiff any questions related to his seizure disorder, even after Plaintiff stated that his wife had accompanied him to the hearing "because I have seizures now[.]"  (*Id.* at 719.)  Moreover, though clearly aware of Plaintiff's significant history of seizures, as well as possible gaps in the record, the ALJ did nothing to gather a more complete picture of Plaintiff's disorder.  "When there is an obvious or 'clear gap[]' in the record, the ALJ is required to seek out missing medical records, even when a party is represented by counsel."  *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 645 (2d Cir. 2020) (summary order) (alteration in original) (quoting *Rosa*, 168 F.3d at 79).  Accordingly, this case must be remanded for further development of the record concerning Plaintiff's seizure disorder.

## B. Plaintiff's Learning Disability

Perhaps the ALJ's most flagrant failure to develop the record in this case is in relation to Plaintiff's learning disability.  The February 14, 2018 prehearing memorandum submitted by Plaintiff's prior counsel listed "Learning Disorder" as one of Plaintiff's three severe, medically determinable impairments.  (Tr. at 270.)  The memorandum also stated that Plaintiff "experiences psychiatric symptoms that prevent him from maintaining the alertness, close attention, or coordination required of his past skilled or semiskilled work," and that he would be "off-task or wholly absent from work activities to an intolerable degree" if made to perform less skilled work.  (*Id.* at 271.)  On July 6, 2017, Plaintiff told Dr. Allen Meisel, a consultative examiner, that "he has a learning disability."  (*Id.* at 401.)  Nevertheless, the ALJ summarily concluded "[t]here is no evidence in the record

---

[9] The Court notes that Plaintiff appears to have had two seizures in 2013 and three seizures in 2014, including one while being treated in the hospital for a seizure the previous night.  (*See* Tr. at 274, 286, 297, 536.)

8

documenting that [Plaintiff] has a learning disability or any other mental impairment." (Tr. at 19.) "It is, however, impossible to know if there is sufficient objective medical evidence to establish that [Plaintiff] was mentally disabled because the ALJ made no attempt to obtain medical records regarding [Plaintiff]'s mental condition, despite his statutory and regulatory duty to do so." *Vega v. Astrue*, No. 08-CV-1525 (LAP) (GWG), 2010 WL 2365851, at *4 (S.D.N.Y. June 10, 2010) (citing 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1512(d)); *see also Calzada v. Astrue*, 753 F. Supp. 2d 250, 275 (S.D.N.Y. 2010) (finding legal error and remanding where the ALJ failed to "meet his affirmative obligation[]" to "further develop and address a clear gap in the record regarding plaintiff's mental status").

\* \* \*

Contrary to the ALJ's conclusory assertions concerning Plaintiff's physical and mental impairments, the facts "'suggest that the absence of any supporting evidence might be attributable to deficiencies in the administrative record rather than fabrication' by the Plaintiff." *Newsome v. Astrue*, 817 F. Supp. 2d 111, 130 (E.D.N.Y. 2011) (quoting *Calzada*, 753 F. Supp. 2d at 275). Additionally, "an ALJ must 'support [his] determination with positive evidence' rather than evidentiary gaps or negative inferences." *Linton v. Comm'r of Soc. Sec.*, No. 18-CV-0632 (FB), 2019 WL 5551436, at *3 (E.D.N.Y. Oct. 28, 2019) (alteration in original) (quoting *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 436 (S.D.N.Y. 2010)). Thus, the Court remands this case for further development of the record consistent with this Memorandum and Order.

## II. Weight of the Medical Evidence

The Court also notes an alternative basis for remand arising from the ALJ's weighing of the medical assessments in this case. An "ALJ must not only develop the proof but carefully weigh it." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quoting *Donato v. Sec'y of Dep't of*

9

*Health & Hum. Servs.*, 21 F.2d 414, 419 (2d Cir. 1983)). Specifically, "[w]ith respect to the nature and severity of a [plaintiff]'s impairments, the SSA recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the [plaintiff]."[10] *Id.* at 128 (internal quotation marks, alterations, and citations omitted). As the Second Circuit has explained:

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. The regulations also specify that the Commissioner will always give good reasons in her notice of determination or decision for the weight she gives [Plaintiff's] treating source's opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal citations and quotations omitted); *see also Vlado v. Berryhill*, No. 16-CV-794 (MKB), 2017 WL 1194348, at *9 (E.D.N.Y. Mar. 29, 2017; 20 C.F.R. § 416.927(c). Some courts describe the evaluation of a treating physician's opinion "as a two-step process: the ALJ must first determine if the treating physician's opinion is entitled to controlling weight, and, if it is not, the ALJ must then go on to determine the weight to which the opinion is entitled based on the factors listed above." *Barnwell v. Colvin*, No. 13-CV-3683 (HBP), 2014 WL 4678259, at *9 (S.D.N.Y. Sept. 19, 2014). Finally, "the Commissioner is

---

[10] Although "[t]he current version of the [Social Security Act's] regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, which was initially filed on January 9, 2015, as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018). Because Plaintiff's claim was filed on January 9, 2015 (Tr. at 17), the treating physician rule applies.

required to provide 'good reasons' for the weight [he] gives to the treating source's opinion." *Halloran*, 362 F.3d at 32–33 (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)).

In this case, when considering Plaintiff's back ailments, the ALJ gave "little weight to the conclusions of Dr. [Mehvash] Hadi," who filled out Plaintiff's disability questionnaire and, along with her colleagues at the Hadi Medical Group, treated Plaintiff between 2012 and 2014, and again beginning in 2017.[11] (*See, e.g.*, Tr. at 22, 24, 445–50, 632.) The ALJ concluded that "Dr. Hadi did not give any physical examination findings to support to [her] conclusions" and that her "treatment notes actually show unremarkable physical examination findings." (*Id.* at 24.) Instead, the ALJ gave "great weight to, and adopt[ed the] conclusions of Dr. [Allan] Levine," the medical expert who testified at the February 20, 2018 hearing. (*Id.*) The ALJ found that Dr. Levine "gave cogent and convincing reasons for his opinion," which was "the only one that [was] based on a review of the complete record." (*Id.*) Further, the ALJ explained that because Dr. Levine's "testimony cited to specific medical evidence in the record and clearly showed that he was familiar with the entire medical record," it was appropriate to "give his opinion significant weight and give the other opinions in the record weight only to the extent they [were] consistent with Dr. Levine's assessment." (*Id.*) Lastly, the ALJ gave "some weight" to the three consultative examiners, Drs. Amelia Conte-Russian (*see id.* at 379), Chaim Shtock (*see id.* at 389), and Allen Meisel (*see id.* at 401), because "they only examined the claimant on one occasion and did not have [Plaintiff]'s treatment records" (*id.* at 24).

---

[11] As the ALJ noted, Plaintiff received multiple treatments from several doctors at the Hadi Medical Group, including Drs. Mehvash Hadi, Mohammed Hadi, and Shumail Haque. (Tr. at 22.) The Court notes that the record also shows that Plaintiff received treatment from Drs. Mohammed Umar (*id.* at 445), Farhana Ahmed (*id.* at 477), and Yevgenly Sorokin (*id.* at 481), all of whom documented "extensive" back pain.

11

Here, in discounting the medical opinions of Plaintiff's treating physicians at the Hadi Medical Group, the ALJ failed to comprehensively discuss or elaborate on all of the relevant factors, *Halloran*, 362 F.3d at 32–33; 20 C.F.R. § 416.927(c)(2), despite the fact that the ALJ had years of treatment notes from these specialists (*see* Tr. at 24). Furthermore, to the extent the ALJ assigned little weight to Dr. Hadi's opinion because her treatment notes showed "unremarkable physical examination findings" (*id.*), that conclusion is not, in fact, supported by the medical records. For example, Dr. Hadi's treatment notes consistently showed that over the period that she and her colleagues treated Plaintiff, they documented that Plaintiff suffered extreme pain (*see id.* at 425, 445–50, 477, 481, 484, 495, 636, 672, 676, 683), and prescribed to him pain medication (*id.* at 455, 488–489, 503, 510). Moreover, to the extent the ALJ believed that these treatment records were insufficient for him to engage in a full analysis of the relevant factors, or were inconsistent with other evidence in the record (*e.g.*, Dr. Levine's assessment), as discussed *supra*, he should have taken affirmative steps to develop a sufficient evidentiary record, including soliciting updated medical opinions from these physicians. *See Burgess*, 537 F.3d at 129 ("In light of the ALJ's affirmative duty to develop the administrative record, 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'" (quoting *Rosa*, 168 F.3d at 79)); *see also Schaal*, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information . . . *sua sponte*.").

For these reasons, the Court concludes that the ALJ's decision to give little weight to the medical opinions of Plaintiff's treating physicians at the Hadi Medical Group is not supported by substantial evidence and was thus in error. *See Mullings v. Colvin*, No. 13-CV-1705 (KAM), 2014 WL 6632483, at *15–16 (E.D.N.Y. Nov. 21, 2014) (remanding where the ALJ "made conclusory statements" in discounting the opinions of the plaintiff's treating physicians); *Lopez-Tiru v. Astrue*,

12

No. 09-CV-1638 (ARR), 2011 WL 1748515, at *4 (E.D.N.Y. May 5, 2011) ("[A]n ALJ may not reject the opinion of a treating physician simply because it is inconsistent with the opinion of non-treating physicians."). On remand, the ALJ should fully develop the record and then accord each treating physician's opinion with its proper weight.

## CONCLUSION

For the reasons contained herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 27, 2020
         Brooklyn, New York

13